**ORIGINAL**

SLR:CSK
F. #8901653

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

AUG 1 6 2004

★BROOKLYN OFFICE ★

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

               Plaintiff,

     - against -

PRIVATE SANITATION INDUSTRY ASSOCIATION
OF NASSAU/SUFFOLK, INC., et. al.,

               Defendants.

- - - - - - - - - - - - - - - - - X

Civil Action
No. CV-89-1848
(Glasser, J.)

**DECLARATION OF ASSISTANT U.S. ATTORNEY
CLAIRE S. KEDESHIAN IN OPPOSITION TO
ALLEN DEFENDANTS' MOTION TO DISMISS
FOR FAILURE TO PROSECUTE**

    CLAIRE S. KEDESHIAN, declares, pursuant to 28 U.S.C. §
1746, under penalty of perjury, as follows:

    1.  I am an Assistant United States Attorney, of counsel to
ROSLYNN R. MAUSKOPF, United States Attorney for the Eastern
District of New York, attorney for plaintiff, United States of
America, and am familiar with the facts and circumstances of this
action.

    2.  I submit this declaration and the exhibits attached
hereto in opposition to defendants John Allen and Daniel Finley
Allen & Co., Inc. motion to dismiss this case for failure to
prosecute.

    3.  On June 15, 2004 the United States responded to Mr.
Scarring's May 28, 2004 letter in order to demonstrate that any

contemplated motion to dismiss for failure to prosecute would be futile. (A copy of the United States' June 15, 2004 letter is attached hereto as Exhibit A).

4. On or about February 28, 1994, this Court entered a Consent Judgment which established the creation of a Court-appointed monitorship over the settling defendants in connection with this civil RICO action (hereinafter referred to as "the Carting Industry Monitorship"). (A copy of the Consent Judgment is attached hereto as Exhibit B).

5. Throughout the course of this litigation, as reflected in the terms of the Consent Judgment, the remedy and ultimate goal of this civil RICO action has be "to ensure that the private sanitation industry on Long Island and the customers serviced by that industry be free from racketeering, corruption, violence or the threat of violence, and the influence and effects of organized crime." See Consent Judgment (Exhibit B) at p. 2; Complaint at pp. 129-132 (setting forth the injunctive, divestiture, monetary and other relief sought pursuant to 18 U.S.C. § 1964).

6. Pursuant to the Consent Judgment, the Court appointed Michael Cherkasky, Esq. of Kroll, Inc., as the Compliance Officer; Leon Lazer, Esq. as the Hearing Officer; and Christopher Jensen, Esq., as the Receiver over the settling defendants.

7. To date, the United States has resolved this case with eighty-six (86) of the total of one hundred and twelve (112) corporate and individual defendants. Fifty-four (54) of the

individual and corporate defendants, including their affiliated corporate entities, have agreed to be subject to the Consent Judgment, the Carting Industry Monitorship, and paid funds towards the on-going oversight by the Compliance Officer.[1]

8. Moreover, as a result of the United States' efforts, seven (7) individual and corporate defendants have been permanently enjoined from the garbage carting industry.

9. In addition to the Carting Industry Monitorship, on December 28, 1993, the Court entered a Consent Decree which was agreed to by the United States and the defendant Local 813 of the International Brotherhood of Teamsters ("Local 813"). (hereinafter referred to as "the Local 813 Monitorship"). Additional signatories of this Consent Judgment included the International Brotherhood of Teamsters ("IBT"), its Trustees, and the Independent Review Board ("IRB").[2] The Investigative Officer appointed under this Consent Judgment has been responsible and continues to be responsible for investigating, _inter alia_, racketeering activity or activity by elements of organized crime

---

[1] Included among the settling defendants are A-1 Carting, South Side Carting, American Transfer Co., d/b/a V & J Rubbish Removal, and their principles. The defendant AA & M Carting was dismissed by stipulation following the Court's decision in United States v. PSIA, 793 F. Supp. 1114, 1143 ("PSIA I")(E.D.N.Y. 1992). By order of the Court dated September 7, 1993, default judgment was entered against the defendant Wayside Carting. See Docket Sheet, United States v. PSIA, CV 89-1948 (ILG), at Document No. 678.

[2] The IRB was established pursuant to a separate Consent Decree entered on March 14, 1989 in United States v. International Brotherhood of Teamsters, Civil Action No. CV 88-4436 (S.D.N.Y.) and continues to oversee the operations of the IBT.

within or affecting Local 813.   The very purpose of this Consent Judgment, and the subsequent amendments thereto, was and is "to eradicate any influence of organized crime or corruption over Local 813 while preserving the Local's strength as the representative of its membership."   See Fifth Amended Consent Decree, dated May 9, 2003 at pp. 1-2 (a copy of which is attached hereto as Exhibit C).

10.   Between August 1998 and May 2003, with respect to the Local 813 Monitorship, among other things, the United States has successfully: (a) negotiated a settlement and the establishment of procedures for free, fair and untainted elections which were held in August 2000; (b) extended the term of the Investigative Officer; (c) extended the oversight authority of the Investigative Officer over subsequent Local 813 elections which were held in November 2002; and, most recently, (d) extended the terms of the Investigative Officer for an additional three years. See Fifth Amended Consent Decree (Exhibit C) at pp. 2-3.

11.   In addition to the foregoing significant developments in this complex and multi-defendant civil RICO action, the United States has successfully defended, most recently, a motion by the enjoined co-defendant Nicholas Ferrante to modify the terms of the Consent Decree so ordered by the Court on November 6, 1996. (A copy of Judge Glasser's May 19, 2003 Memorandum and Order is attached hereto as Exhibit D).

12.   Throughout the course of this litigation, defendants John Allen and Daniel Finley Allen & Co., Inc. have been

5

unfettered in conducting their carting business and free from any oversight.

13.   Throughout the course of this litigation, neither defendant John Allen nor Daniel Finley Allen & Co., Inc. have been subject to the Carting Industry Monitorship or the Local 813 Monitorship.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated:   Brooklyn, New York
         July 28, 2004

                              *Claire S. Kedeshian*
                              CLAIRE S. KEDESHIAN
                              Assistant U.S. Attorney



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

SLR:CSK
F# 89V01653

One Pierrepont Plaza
Brooklyn, New York 11201

Mailing Address:  147 Pierrepont Street
Brooklyn, New York 11201

June 15, 2004

<u>Via Federal Express</u>

Stephen P. Scaring, Esq.
666 Old Country Road
Suite 501
Garden City, New York 11530-2004

Re:  United States of America v. PSIA, et al.
     <u>Civil Action No. CV 89-1848 (E.D.N.Y.)</u>

Dear Mr. Scaring:

This letter is written in response to your May 28th letter and as a follow-up to this office's May 26th letter seeking supplemental discovery from the remaining defendants in this action.

As an initial matter, you incorrectly state that the government has taken no action in this case since the Second Circuit decision which, we note, upheld dismissal of your clients' defenses. <u>U.S.A. v. Allen, et. al.</u>, 155 F.3d 35, 43-44 (2d Cir. 1998). In fact, since the decision was rendered, the government has diligently prosecuted the action, ulitmately reaching settlements with a number of individual and corporate defendants who have agreed to be subject to the court-appointed monitorship. Additionally, the government successfully defended before Judge Glasser the efforts of the enjoined defendant, Nicholas Ferrante, to re-enter the garbage carting industry. The government has also successfully applied to extend the terms and conditions of the Local 813 Consent Decree, with the approval of the Local, the International Brotherhood of Teamsters, and Judge Glasser.

While this office regrets that Sarah Allen, has passed away,[1] her testimony was preserved through her March 2, 1994

---

[1] The government is prepared to voluntarily dismiss its claims against Ms. Allen.

2

deposition.  The case against the individual defendant John Allen and the corporate defendant Daniel F. Allen are still viable. Indeed, it is unclear to the government how these remaining defendants have been prejudiced by the passage of time in this litigation, as they have been permitted to continue their garbage carting business operations.  Accordingly, it is the govenment's position that any contemplated motion to dismiss based on government inaction in this litigation would be futile.

We remain amenable, under the circumstances, to extending the time the remaining defendants John Allen and Daniel F. Allen Co. have to respond to the supplemental discovery requests.  If you wish to discuss this matter further, please do not hesitate to contact me.

Very truly yours,

ROSLYNN R. MAUSKOPF
United States Attorney

By: Claire S.
CLAIRE S. KEDESHIAN
Assistant U.S. Attorney
(718) 254-6051

RLB:JDM:jdm
F.# 8901653
CRTCONS3.102

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

              Plaintiff,

     - against -

PRIVATE SANITATION INDUSTRY
ASSOCIATION OF NASSAU/SUFFOLK INC.,
et al.,

          Defendants.

- - - - - - - - - - - - - - - -X

CONSENT JUDGMENT

Civil Action
No. CV-89-1848

(Glasser, J.)

       WHEREAS this action having been commenced by plaintiff UNITED STATES OF AMERICA (hereinafter "Plaintiff") on June 6, 1989 by the filing of a Complaint, pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, et seq. ("RICO"), and copies of the Summons and Complaint having been duly served upon all the defendants who are parties to this Consent Judgment; and

       WHEREAS the defendants have denied the truth and validity of the claims contained in the Complaint; and

       WHEREAS certain individual defendants, including any corporations or other entities under their control which are engaged in the collection, transportation or disposal of solid waste, and certain corporate defendants, including any owners, shareholders, officers, directors, employees or agents of these corporate defendants, having consented to the entry of this Consent Judgment in the Stipulations of Settlement so ordered by

2

this Court, without admitting the truth or validity of any of the claims or allegations contained in the Complaint, or in any other papers filed or submitted by Plaintiff; and

WHEREAS Plaintiff and these settling individual and corporate defendants (hereinafter collectively known as the "Settling Defendants") intend by this Consent Judgment to insure that the private sanitation industry on Long Island and the customers serviced by that industry be free from racketeering, corruption, violence or the threat of violence, and the influence and effects of organized crime; and

WHEREAS Plaintiff and the Settling Defendants have agreed and do hereby agree to the appointment by the Court of a Compliance Officer, a Hearing Officer and a Receiver, who will have certain powers as further delineated below in order to ensure compliance with the terms of this Consent Judgment and to accomplish the aim of insuring that the private sanitation industry on Long Island is free of racketeering, corruption, violence or the threat of violence and the influence and effects of organized crime; and

WHEREAS Plaintiff and the Settling Defendants further have agreed and do hereby agree that the powers granted to the Compliance Officer and the Hearing Officer are to be used in a manner consistent with the dictates of procedural due process and the right of the Settling Defendants to otherwise conduct their business in an unrestricted and legal manner subject to the limitations of this Consent Judgment; and

3

WHEREAS it is the intent of the settling parties that the Compliance Officer appointed herein shall only supervise those activities of the Settling Defendants occurring subsequent to the date of entry of this Consent Judgment, except that nothing herein shall prevent the Compliance Officer from examining or presenting evidence of prior activity to the extent that such prior activity is relevant or necessary to the supervision of activity occurring subsequent to the entry of this Consent Judgment:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.  <u>JURISDICTION</u>:  For purposes of this action, the Settling Defendants consent to this Court's exercise of jurisdiction over this action and over the Settling Defendants.

2.  <u>INJUNCTION AGAINST CERTAIN ACTIVITIES</u>:  The Settling Defendants are hereby enjoined from:

> a. knowingly associating with any member or associate of an organized crime group for any commercial purpose;
>
> b. engaging in conduct, or conspiring to engage in conduct, which constitutes an act of racketeering, as defined in 18 U.S.C. §§ 1961 <u>et</u> <u>seq</u>., or an act of corruption which includes, but is not limited to, bribery, extortion, larceny and theft;
>
> c. engaging in conduct, or conspiring to engage in conduct, which constitutes or promotes an unlawful customer allocation agreement or property rights system designed to inhibit a competitive market system in the solid waste industry;
>
> d. engaging in conduct, or conspiring to engage in conduct, which constitutes bid-rigging or which unlawfully interferes with the bidding process with respect to any public or private contracts involving the collection, transportation or disposal of solid waste; and

4

e. obstructing the work of the court-appointed Compliance Officer, Hearing Officer and/or Receiver described herein or the implementation of any other relief that may be imposed in this case.

3.  <u>INFORMATION TO BE PROVIDED BY THE SETTLING</u>

<u>DEFENDANTS</u>:  The Settling Defendants will provide to the Compliance Officer, appointed by the Court in accordance with the provisions set forth below, 15 days prior notice of all sales, purchases, assignments or transfers of the following assets in the solid waste industry: any contracts, routes, customer stops, equipment, stock, good will or other assets they have in the solid waste industry; except that such notice shall not be required of a Settling Defendant unless the total value of the equipment or other assets sold, purchased, assigned or transferred in any six month period exceeds $25,000.  The foregoing provision shall not pertain to the sale, purchase, assignment or transfer of one truck, except that in the event that more than one truck is sold, purchased, assigned or transferred in any six month period or in the event that more than one truck is sold, purchased, assigned or transferred between the same parties at any time within the period in which the relevant Settling Defendant is subject to this Consent Judgment, the Compliance Officer will be entitled to notice as set forth above.  All information provided to the Compliance Officer in accordance with this paragraph shall remain privileged and confidential and not disclosed to any third party unless necessary for the Compliance Officer to carry out his/her mandate under this Consent Judgment.

4   <u>APPOINTMENT OF A COMPLIANCE OFFICER AND A HEARING</u>

<u>OFFICER</u>:  The Court shall appoint a Compliance Officer, from three individuals proposed by the Plaintiff, who shall have the powers, rights and responsibilities as set forth below.

The Court shall further appoint an individual jointly proposed by the Plaintiff and the Settling Defendants as a Hearing Officer, who shall have the powers, rights and responsibilities as set forth below.  The Court shall appoint the individual proposed by the Plaintiff and the Settling Defendants as the Hearing Officer unless the Court finds the individual unqualified or unsuitable, in which case a new individual will be proposed to the Court by the Plaintiff and the Settling Defendants.  The name of the individual proposed for the position of Hearing Officer shall be submitted to the Court within three weeks after the entry of this Consent Judgment, except that the Court may extend that period for good cause shown.  In the event that the Plaintiff and the Settling Defendants cannot agree on an individual to propose to the Court for the position of Hearing Officer within the prescribed time period, the Court shall appoint the Hearing Officer either on its own or after consideration of the recommendations of the Plaintiff and the Settling Defendants.

The Compliance Officer and the Hearing Officer shall each be an attorney admitted to practice in both the courts of New York State and the United States District Court for the Eastern District of New York.

6

If at any time the Compliance Officer or the Hearing Officer resigns, is discharged by the Court or becomes disabled while performing his/her duties, a new Compliance Officer or Hearing Officer shall be appointed under the criteria and procedures of this section.

5.   COMPLIANCE OFFICER'S POWERS, RIGHTS AND RESPONSIBILITIES:  The Compliance Officer shall be appointed by the Court to ensure and promote compliance with the injunctive relief issued by the Court and to accomplish the objectives of this Consent Judgment.  In order to fulfill this mandate, the Compliance Officer shall have the following powers, rights and responsibilities:

a.   To monitor and encourage compliance with the injunctive relief issued by the Court;

b.   To implement such rules of procedure as he/she deems necessary to effectuate his/her duties.  Such rules shall be in writing and distributed to the Plaintiff and the Settling Defendants.  These rules of procedure shall be reasonable and shall not unreasonably restrict the Settling Defendants' right to conduct business;

c.   To investigate, whether in response to a complaint by any person or otherwise, any acts or practices which the Compliance Officer believes may violate the injunctive relief issued by the Court;

d.   To inspect the books and records of the Settling Defendants upon reasonable notice and in furtherance of his/her

investigative powers as delineated herein, and to make copies of these books and records, except that the information obtained shall remain privileged and confidential and not disclosed to any third party unless necessary for the Compliance Officer to carry out his/her mandate under this Consent Judgment;

e.  To demand and take the sworn statements and/or sworn oral testimony of any Settling Defendant, and, to the extent that a Settling Defendant is a corporation, of any owner, shareholder, officer, director, employee, agent or representative of the Settling Defendant, without further need to seek process from the Court, except that nothing herein shall constitute a waiver of any privileges and immunities existing under law;

f.  To use the subpoena power of the District Court to compel the sworn testimony or production of records by any individual, corporation or other entity not covered by paragraphs 5(d) and (e) above to the same extent that a party to this action would be entitled to use this process to ensure compliance with the injunctive relief issued by the Court;

g.  To seek relief before the Hearing Officer, or before the Magistrate Judge assigned to this case (as the Compliance Officer deems appropriate after considering the different hearing procedures and types of relief and sanctions available in each forum) for any violation of the injunctive relief issued by the Court, and to appeal or defend on appeal the decisions of the Hearing Officer or the Magistrate Judge before the District Court; except that the Compliance Officer must give

8

a Settling Defendant 30 days notice of an alleged violation with a statement of charges set forth with reasonable particularity. Notwithstanding this notice requirement, nothing shall preclude the Compliance Officer from shortening the notice period by proceeding by order to show cause before either the Hearing Officer or the Magistrate Judge.

h.  To request that the United States Attorney's Office seek relief for any violation of the injunctive relief issued by the Court, represent the Compliance Officer's position on any appeal to the District Court, or assist the Compliance Officer in any other matter arising under this Consent Judgment, and to respond to the requests of the United States Attorney's Office for information; except that the United States Attorney's Office retains the discretion to deny any of the Compliance Officer's requests made pursuant to this paragraph;

i.  To employ legal counsel, accountants, investigators, consultants, and any other professional advisors or services, and make such expenditures from the Settlement Fund described herein as are necessary to assist in the proper discharge of his/her duties;

j.  To apply to the Court, upon notice to the parties to this Consent Judgment, for such assistance and relief as may be necessary and appropriate for the effective discharge of the Compliance Officer's duties; and

k.  To obtain, upon approval of the Court-appointed Receiver described below, such expenditures from the Settlement

Fund as are necessary to assist in the proper discharge of his/her duties.

6. <u>THE HEARING OFFICER'S POWERS, RIGHTS AND RESPONSIBILITIES</u>: The Hearing Officer shall be appointed by the Court in order to administratively adjudicate any charges of alleged violations of the injunctive relief issued by the Court which are brought before the Hearing Officer by the Compliance Officer or by the United States Attorney's Office, and, upon the finding of a violation, to impose appropriate sanctions or relief to accomplish the objectives of this Consent Judgment. In order to fulfill this mandate, the Hearing Officer shall have the following powers, rights and responsibilities:

a. To adjudicate any alleged violations of the injunctive relief issued in accordance with the procedures and standards of evidence provided for adjudicatory hearings in the Federal Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551, <u>et seq.</u>, and §§ 701 <u>et seq.</u> Any hearing held by the Hearing Officer in accordance with this paragraph shall be in conformity with the manner in which the APA has been construed by caselaw. Hearsay shall be admissible and the strict rules of evidence shall not apply so long as the evidence upon which the determination is based has probative value and the determination is supported by substantial evidence.

b. To implement such rules of procedure as he/she deems necessary to supplement the APA in order to effectuate

his/her duty to fairly adjudicate any alleged violation of the injunctive relief issued by the Court;

c.  To demand that a Settling Defendant, and, to the extent that a Settling Defendant is a corporation, any owner, shareholder, officer, director, employee, agent or representative of the Settling Defendant, appear before him/her to give sworn testimony or produce books and records, except that nothing herein shall constitute a waiver of any privileges and immunities existing under law;

d.  To use the subpoena power of the District Court to compel any individual, corporation or other entity not covered by subsection 6(c) above to appear before him/her to give sworn testimony or produce books and records to the same extent that such an individual, corporation or other entity could be compelled to appear before the District Court in a hearing regarding a violation of any injunctive relief issued by that Court.  Upon request of the Compliance Officer, of the United States Attorney's Office or of a Settling Defendant who has been charged with a violation, the Hearing Officer shall issue a subpoena to compel the appearance of any individual or entity at any administrative hearing held pursuant to paragraph 6(a);

e.  After a hearing as provided for in subsection 6(a) above, to impose fines, to issue cease and desist orders from engaging in proscribed conduct in the future, to impose penalties for violations of his/her own orders, and to direct the payment of restitution to any individual, corporation or governmental

11

entity which has been injured through a violation of the injunctive relief issued by the Court; except that, in any one proceeding, the Hearing Officer has no authority to impose against a Settling Defendant a fine, penalty or restitution in excess of $75,000;

f.  To request the assistance of the United States Attorney's Office in order to effectuate the powers, rights and responsibilities enumerated herein, or in any matter arising under this Consent Judgment;

g.  To apply to the Court, upon notice to the parties to this Consent Judgment, for such assistance and relief as may be necessary and appropriate for the effective discharge of his/her duties; and

h.  To obtain, upon approval of the Court-appointed Receiver described below, such expenditures from the Settlement Fund as are necessary to assist in the proper discharge of his/her duties.

7.  THE MAGISTRATE JUDGE'S POWERS, RIGHTS AND RESPONSIBILITIES:  The Plaintiff and the Settling Defendants hereby consent to give the Magistrate Judge assigned to this action the same power that the District Court would have to adjudicate any charges of alleged violations of the injunctive relief issued by the Court.  These charges may be brought before the Magistrate Judge by the Compliance Officer or the United States Attorney's Office, and, upon the finding of a violation, the Magistrate Judge shall impose appropriate sanctions or relief

12

to accomplish the objectives of this Consent Judgment.  Because
the Magistrate Judge will have the power to grant much broader
relief and sanctions than the Hearing Officer, the parties agree
that he/she will be bound by the Federal Rules of Civil Procedure
and Federal Rules of Evidence in making his determination.  In
order to fulfill his/her mandate, the Magistrate Judge shall have
the following powers, rights and responsibilities:

    a.  To hold hearings and decide dispositive motions in
accordance with the procedures and standards of evidence provided
by the Federal Rules of Civil Procedure and Federal Rules of
Evidence, and with the local rules of the United States District
Courts for the Southern and Eastern Districts of New York in
order to adjudicate any alleged violations of the injunctive
relief issued;

    b.  After a hearing as provided for in subsection 7(a)
above, to order any sanction or relief that the District Court
would be empowered to impose upon a finding of a violation of
injunctive relief issued by that Court, including but not limited
to:  divestiture of interests in the solid waste industry,
disgorgement of illicit proceeds, debarment or suspension from
the solid waste industry, debarment or suspension from bidding on
or holding any particular public or private contract, the
imposition of fines, the issuance of cease and desist orders, the
imposition of penalties for violations of the Magistrate Judge's
own orders, the direction to pay restitution to any individual,
corporation or governmental entity which has been injured through

13

a violation of the injunctive relief issued by the Court, and such other relief and sanctions as the Court possesses.

    8.  <u>APPEAL RIGHTS AND LIMITATIONS</u>:  The parties to this Consent Judgment have the right to appeal an adverse determination of the Magistrate Judge or the Hearing Officer only to the District Court.  There shall be no other or further right of appeal, including no right of appeal to the Second Circuit Court of Appeals.  The appeal from an adverse determination of the Magistrate Judge or the Hearing Officer shall be filed and heard in accordance with the time limits prescribed by Rule 14 of the Rules For Proceedings Before Magistrates in the Eastern District of New York.  Any order of the Magistrate Judge or the Hearing Officer issued on a finding of a violation of injunctive relief shall be automatically stayed for 20 days to allow time to make the appeal to the District Court.  The appealing party may apply for an extension of the stay from the District Court upon the filing its appeal.

    In the case of an appeal of the determination of the Magistrate Judge to the District Court, the standard of review and procedural rules applicable to appeals of a Magistrate Judge's order issued after a civil trial on consent shall control except insofar as they are otherwise inconsistent with the terms of this Consent Judgment.

    In the case of an appeal of the decision of the Hearing Officer to the District Court, the standard of review and procedural rules applicable to appeals of agency determinations

14

under the APA shall control, including whether the Hearing
Officer's determination is supported by substantial evidence and
whether the relief or sanction imposed was arbitrary or
capricious.  For purposes of this review, substantial evidence
means such relevant evidence, including hearsay, as a reasonable
mind might accept as adequate to support a conclusion.

        9.  THE SETTLEMENT FUND AND THE APPOINTMENT OF A
RECEIVER:  The Settling Defendants shall deposit with Clerk of
the United States District Court for the Eastern District of New
York the agreed-upon settlement amounts for each Settling
Defendant as set forth in their Stipulations of Settlement.  The
payments shall be by certified check payable to "CLERK, UNITED
STATES DISTRICT COURT, E.D.N.Y."  After receipt of these funds,
the Clerk of the Court shall notify the United States Attorney's
Office of the receipt of payment and pay the funds received into
an interest bearing account which shall be designated the
"Carting Industry Settlement Fund."  All interest earned on the
money paid into the Settlement Fund shall become part of the
Fund.

        A Receiver shall be appointed by the Court from three
names presented by the Plaintiff.  The Receiver shall be
responsible for authorizing expenditures and executing payment
from this Settlement Fund and will make reports to the Court
every six (6) months regarding the expenditures from the
Settlement Fund and its present balance.  If at any time the
Receiver resigns, is discharged by the Court or becomes disabled

while performing his/her duties, a new Receiver shall be appointed under the criteria and procedures of this section.

The Compliance Officer and the Hearing Officer shall apply to the Receiver as necessary to authorize payment from the Settlement Fund for their compensation and expenses and for the compensation and expenses of any person or persons hired under their authority. Upon approval of the Court, the Receiver may draw upon the Settlement Fund as necessary for his/her compensation and expenses. After the expiration of this Consent Judgment's term of authority over all the Settling Defendants, any money remaining in the Settlement Fund shall revert to Plaintiff.

Any award of disgorgement money, fines or penalties that is ordered by the District Court or by the Magistrate Judge in this action shall be paid into the Settlement Fund as set forth above, except that the Plaintiff may apply for payment of any of its costs and disbursements incurred in obtaining the award.

Any award of disgorgement money, fines or penalties that is ordered by the Hearing Officer in this action shall be made by certified check payable to the "UNITED STATES TREASURER" and sent to the United States Attorney's Office for the Eastern District of New York.

10. COMPLIANCE OFFICER'S REPORTS TO THE COURT: Every six (6) months, the Compliance Officer shall appear and report to the Court on his/her progress in carrying out his/her mandate

16

under this Consent Judgment and the rules he/she has enacted to assist in achieving that mandate.  The Plaintiff and the Settling Defendants shall have a right to appear and comment before the Court at that time.

11. HOLD HARMLESS:  The Compliance Officer, the Hearing Officer, the Receiver and any persons hired by or acting on their behalf under this Consent Judgment shall enjoy all the privileges and immunities from personal liability that may exist under the law for federal judicial officers.

12.  TERM:  The authority of the Compliance Officer and the Hearing Officer over a particular Settling Defendant shall terminate five years after the appointment of those officers with authority over that particular Settling Defendant, except that the Compliance Officer and the Hearing Officer may complete the adjudication of any pending charges of violations or appeals to the District Court after their authority over a Settling Defendant has otherwise ceased.

13.  RETENTION OF JURISDICTION:  The District Court shall retain exclusive jurisdiction to supervise implementation of this Consent Judgment, to supervise the activities of the Compliance Officer, the Hearing Officer and the Receiver, and to decide any and all issues arising under the Consent Judgment.

14.  SCOPE OF JUDGMENT:  This Consent Judgment is intended to settle all civil claims against the Settling Defendants as set forth in the Complaint in this action, without costs or attorney's fees to any settling party.  This Consent

17

Judgment is entered into for purposes of settlement only, and nothing in it shall be deemed: (a) an admission by any Settling Defendant of the truth of the allegations set forth in the Complaint, or (b) a waiver by the Plaintiff of any right to allege violations against any Settling Defendant for any actions not alleged in the Complaint.  Nothing contained in this Consent Judgment is intended to constitute cause for a denial of a permit or of the right of the Settling Defendants to operate by any government agency.  Nothing in this Consent Judgment, nor any of the powers it invests in the Magistrate Judge, the Hearing Officer or the Compliance Officer, shall be construed to otherwise limit the District Court in terms of its authority to impose appropriate relief in this action.

Dated:  Brooklyn, New York
        , 1994


SO ORDERED:

I. LEO GLASSER
United States District Judge
Eastern District of New York

KAM:CSK
F# 8901653

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

               Plaintiff,

      -against-

PRIVATE SANITATION INDUSTRY
ASSOCIATION OF NASSAU/SUFFOLK
INC., *et. al.*,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**FIFTH AMENDED
CONSENT DECREE**

Civil Action No.
CV 89-1848

(Glasser, J.)

WHEREAS, Plaintiff, United States of America commenced this action on June 6, 1989

by filing a complaint pursuant to the Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1961, *et. seq.*, against various individuals and entities, including

Defendant, Local 813 ("Local 813") of the International Brotherhood of Teamsters (the "IBT");

and

WHEREAS, the IBT subsequently appointed a Trustee to oversee the operations of Local

813; and

WHEREAS, on December 28, 1993, this Court entered a Consent Judgment applicable to

and agreed to by Plaintiff and Defendant Local 813, as well as by the IBT, its Trustees, and the

Independent Review Board (the "IRB") established pursuant to the separate Consent Decree

entered on March 14, 1989, in *United States v. International Brotherhood of Teamsters*, Civil

1

Action No. CV 88-4436 (S.D.N.Y.); and

WHEREAS, the purpose of the Consent Judgment entered in this case was and remains to eradicate any influence of organized crime or corruption over Local 813 while preserving the Local's strength as the representative of its membership; and

WHEREAS, the Consent Judgment so ordered by this Court on December 28, 1993 provided for the appointment by the Court of an Investigative Officer with the responsibility to investigate, *inter alia*, racketeering activity or activity by elements of organized crime within or affecting Local 813; and

WHEREAS, such Investigative Officer was appointed by this Court in January 1994; and

WHEREAS, the term of the Investigative Officer was extended by this Court's Orders of January 15, 1997, March 19, 1997, and September 30, 1997, by an Amended Consent Judgment so ordered by this Court on December 31, 1997, and

WHEREAS, pursuant to a Second Amended Consent Judgment so ordered by this Court on April 12, 2000, the parties established procedures for a free, fair and untainted election within Local 813 which election was held in August 2000; and

WHEREAS, pursuant to a Third Amended Consent Judgment so ordered by this Court on May 22, 2001, this Court extended, *inter alia*, the term of the Investigative Officer for a period of six months after the installation of the Principal Officer and executive board members of Local 813 in the next Local 813 election; and

WHEREAS, pursuant to a Fourth Amended Consent Judgment so ordered by this Court on July 18, 2002, this Court extended, *inter alia*, the oversight of the Investigative Officer over the next elections for Local 813, which elections took place in November 2002; and

2

WHERAS, all parties seek through this Fifth Amended Consent Judgment to extend the term of the Investigative Officer, as well as the provisions of the Consent Judgment entered on December 28, 1993, as amended, with the additional modifications set forth below, for a period of an additional three years;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. *JURISDICTION*:

For purposes of this action and the enforcement of this Consent Judgment, the Principal Officer consents on behalf of Local 813 to this Court's exercise of jurisdiction over Local 813, its officers, agents, representatives, and employees in this action.

2. *REINCORPORATION OF PROVISIONS:*

The complete terms and provisions of Paragraphs 2, 4, 7, 8, 9, and 10 of the Consent Judgment so ordered by this Court on December 28, 1993, are reincorporated in their entirety herein, except the term "Principal Officer" shall be substituted for any reference to the term "IBT Trustee" contained therein.

3. *THE INVESTIGATIVE OFFICER*:

(a) The individual previously appointed by this Court as Investigative Officer, John Skala, shall remain in this position and is hereby reappointed by the Court, for a term as specified below, at Paragraph 4.

(b) The Investigative Officer shall continue to have the powers, rights and responsibilities as set forth in Paragraph 4 of the Consent Judgment so ordered by this Court on December 28, 1993. The Investigative Officer shall devote sixteen hours per week investigating the activities of Local 813 in accordance with the objectives of this agreement; and twenty hours per week

3

shall be utilized in accordance with the directions of the Chief Investigator of the IRB. The Investigative Officer shall be compensated by the IRB at one-half of the salary and benefits package of a staff investigator of the IRB, and through the same procedure as staff investigators of the IRB are compensated. The Investigative Officer shall receive additional compensation in the amount of $57,500.00 per annum. Local 813 shall reimburse the IBT in the amount of $57,500.00 per annum for the salary of the Investigative Officer.

(c) In the event that the IRB or the Office of the Chief Investigator of the IRB shall terminate prior to the expiration of the term of the Investigative Officer as set forth under this Consent Judgment, the Investigative Officer shall continue to devote the equivalent of not less than sixteen hours per week to investigating the activities of Local 813 in accordance with this agreement, and shall be compensated by Local 813 at the rate of $57,500.00 per annum.

(d) The Investigative Officer shall continue to be provided with office space, office furniture and equipment, secretarial assistance and other clerical and investigative resources by the Chief Investigator of the IRB. The expenses of the Investigative Officer shall be reimbursed in the same manner and through the same procedures as staff investigators of the IRB. Local 813 shall compensate the IBT for the expenses of the Investigative Officer that relate to his duties in enforcing this Consent Judgment. In the event that the IRB or the Office of the Chief Investigator of the IRB shall terminate prior to the expiration of the term of the Investigative Officer as set forth under this Consent Judgment, the Investigative Officer shall be provided with office space, office furniture and equipment, secretarial assistance and other clerical and investigative resources by Local 813.

(e) If at any time the Investigative Officer resigns, is discharged or becomes disabled

4

while performing his duties, a successor shall be chosen in accordance with the following procedure: the United States Attorney's Office will provide to the Principal Officer a list of two persons proposed to be the Investigative Officer, and the Principal Officer shall have fifteen days to interview the proposed persons and to strike one of the two names proposed. The United States Attorney's Office will then submit the remaining name to the Court for its approval. The Court shall have the right to reject the name submitted, and request a resubmission by the U.S. Attorney's Office in accordance with the forgoing provisions of this subparagraph.

4. *TERM OF THE INVESTIGATIVE OFFICER*:

Absent subsequent order of this Court extending the Investigative Officer's term of office for cause, the Investigative Officer's term of office shall expire three years after this Consent Judgment is so ordered by the Court.

5. *NOTICE TO MEMBERSHIP*:

Local 813 shall notify the membership of the extension of the term of the Investigative Officer by posting a Notice of Extension of Appointment of the Investigative Officer, and mailing copies of the Notice to each member's home address.

5

6. The provisions of this Amended Consent Judgment shall govern among the parties hereto in the event of any effort to challenge these provisions pursuant to Title III of the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 401-531.

Dated: Brooklyn, New York
        April ⟨⟩ 2003

SO ORDERED

_____
HONORABLE I. LEO GLASSER
United States District Judge
Eastern District of New York


CONSENTED TO:

ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York

By: _____ 5/7/03
    CLAIRE S. KEDESHIAN
    Assistant U.S. Attorney

SYLVESTER NEEDHAM
Principal Officer, Local 813
of the IBT


By: _____
    SYLVESTER NEEDHAM

J. BRUCE MAFFEO, Esq.
Counsel for the International
Brotherhood of Teamsters
233 Broadway Suite 2701
New York, New York 10279

By: _____
    J. Bruce Maffeo, Esq.


INDEPENDENT REVIEW BOARD
International Brotherhood of Teamsters

By: _____
    CHARLES CARBERRY, Esq.
    Investigative Officer

EISNER & ASSOCIATES
Counsel to Local 813 of the IBT
113 University Place 8th Floor
New York, New York 10003-4588

By: _____
    EUGENE G. EISNER, Esq.


6

6. The provisions of this Amended Consent Judgment shall govern among the parties hereto in the event of any effort to challenge these provisions pursuant to Title III of the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 401-531.

Dated: Brooklyn, New York
      April  , 2003

SO ORDERED

_____
HONORABLE I. LEO GLASSER
United States District Judge
Eastern District of New York

CONSENTED TO:

ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York

By: _____
    CLAIRE S. KEDESHIAN
    Assistant U.S. Attorney

SYLVESTER NEEDHAM
Principal Officer, Local 813
of the IBT

By: _____
    SYLVESTER NEEDHAM

J. BRUCE MAFFEO, Esq.
Counsel for the International
Brotherhood of Teamsters
233 Broadway Suite 2701
New York, New York 10279

By: _____
    J. Bruce Maffeo, Esq.

INDEPENDENT REVIEW BOARD
International Brotherhood of Teamsters

By: _____
    CHARLES CARBERRY, Esq.
    Investigative Officer

EISNER & ASSOCIATES
Counsel to Local 813 of the IBT
113 University Place 8th Floor
New York, New York 10003-4588

By: _____
    EUGENE G. EISNER, Esq.

6

6.  The provisions of this Amended Consent Judgment shall govern among the parties hereto in the event of any effort to challenge these provisions pursuant to Title III of the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 401-531.

Dated: Brooklyn, New York
       April 9th, 2003

                                    HONORABLE I. LEO GLASSER
                                    United States District Judge
                                    Eastern District of New York

CONSENTED TO:

ROSLYNN R. MAUSKOPF                  INDEPENDENT REVIEW BOARD
United States Attorney               International Brotherhood of Teamsters
Eastern District of New York

                                    By: _____
By: _____
     CLAIRE S. KEDESHIAN                 CHARLES CARBERRY, Esq.
     Assistant U.S. Attorney             Investigative Officer

SYLVESTER NEEDHAM                    EISNER & ASSOCIATES
Principal Officer, Local 813         Counsel to Local 813 of the IBT
of the IBT                           113 University Place 8th Floor
                                     New York, New York 10003-4588

By: _____         By: _____
     SYLVESTER NEEDHAM                   EUGENE G. EISNER, Esq.

J. BRUCE MAFFEO, Esq.
Counsel for the International
Brotherhood of Teamsters
233 Broadway Suite 2701
New York, New York 10279

By: _____
     J. Bruce Maffeo, Esq.

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

UNITED STATES OF AMERICA

                                        Plaintiff,

-against-                                                    MEMORANDUM AND ORDER
                                                             89-CV-1848 (ILG)
PRIVATE SANITATION INDUSTRY
ASSOCIATION OF NASSAU COUNTY, INC.,
et al.

                                        Defendants.

-----------------------------------------------------------x

GLASSER, District Judge:

        This is a civil action brought by the United States pursuant to the Racketeering Influenced

and Corrupt Organizations Act ("RICO").  Defendant Nicholas Ferrante moves to modify the

terms of a consent decree so ordered by this Court on November 6, 1996.  For the reasons stated

below, the motion is denied.

## BACKGROUND

        In 1994, this Court awarded summary judgment to the plaintiff against Ferrante, finding

him liable for RICO violations relating to his participation in the Long Island carting industry,

and entered an order enjoining Ferrante from participating in that industry and requiring him to

disgorge the proceeds of unlawful activities and any interest in the Long Island carting industry.

See United States v. Private Sanitation Industry Assoc. of Nassau/Suffolk Inc., 899 F. Supp. 974

(E.D.N.Y. 1994), aff'd 47 F.3d 1158 (2d Cir. 1995).  These unlawful activities included briberies

and violations of the Hobbs Act as part of a scheme to dominate an industry "plagued with

corruption."  Id. at 982-83.  In 1996, this Court awarded summary judgment against Ferrante's

two companies, Unique Sanitation, Inc. ("Unique") and U-Need-a-Roll-Off Corp.  ("U-Need").

United States v. Private Sanitation Industry Assoc. of Nassau/Suffolk Inc., 914 F. Supp. 895 (E.D.N.Y. 1996).

After these judgments, the United States and the Ferrante defendants (which included Ferrante, his son Joseph, Unique and U-Need) entered into a global settlement resolving the remaining claims and issues. A stipulation of settlement memorialized the terms as to Joseph Ferrante, Unique and U-Need.[1] As to Ferrante himself, a Consent Decree modifying the prior injunction was reached. The Court so ordered the stipulation of settlement and the Consent Decree on November 6, 1996. Familiarity with these prior opinions and orders is presumed.

Pursuant to paragraph 1 of the Consent Decree, Ferrante agreed to continue to be bound by the terms of the previously issued injunction but was allowed to resume a limited role in the operations of Unique and U-Need. Specifically, Ferrante was permitted to "to visit the premises of [the companies], to review the books and records of these companies, to meet with employees of these companies, and to discuss with the employees the operations of these companies." (Consent Decree, ¶1(a).) Ferrante agreed otherwise not "to become involved in any aspect of the solid waste industry not specifically set forth in paragraph (a), above." (Id., ¶1(b).) Additionally, Ferrante agreed not to have any communications with customers of Unique or U-Need (id., ¶1(c)(iii)), not to solicit any business concerning solid waste services or the solid waste industry (id., ¶1(c)(iv)), not to communicate with any governmental entity regarding the solid waste industry (id., ¶1(c)(viii)), and not to be employed by or represent in any manner any carting company or solid waste industry business except for the limited exception described in paragraph 1(a) with regard to Unique and U-Need. (Id., ¶1(c)(ix).)

---

[1]    In the stipulation of settlement, Unique and U-Need agreed to supervision by a court-appointed monitor for a term of five years. That term ended in 2001.

In his motion seeking to modify the Consent Decree, Ferrante seeks to "resume limited activities in Unique and U-Need, be recognized as an officer of those corporations, . . . be able to speak with customer[s] and potential customers to develop new business" and "take a direct role in upgrading the service provided, selecting new equipment and otherwise monitoring the business practices of the companies." (Ferrante Aff., ¶¶20-21.) Ferrante notes that many of the features of the Long Island carting industry have changed since 1994.  For example, Ferrante states that the trade association no longer exists, that many of the entities involved in the trade association have ceased operating or changed hands, and that the degree of competition today means that the "situation" that existed prior to judgment no longer exists and could not develop again.  (Id., ¶¶13-15.)

Elaine Wood, a representative from the court-appointed compliance officer that monitored Unique and U-Need for five years, reports that although competition has improved since 1996, the potential for collusion and intimidation still exists and competition is not always "robust."  (Wood Dec. ¶9; see id., ¶¶6-9.)  Since the active monitoring of Unique and U-Need ended, prices for Unique customers have gradually increased despite a decline and then-stabilization of prices more generally in the Long Island carting market, and Unique customers in 2002 "were reporting a price increase of almost $2 per cubic yard over the prices" charged in 2000.  (Id. at ¶9.)  Ms. Wood reports that Unique and U-Need customers interviewed during the last three years generally report that they have not been solicited by other carting companies,[2] recall the prior history of intimidation and threats that existed when Ferrante controlled the companies, and some customers reported that Unique has used aggressive sales tactics.  (Id.,

---

[2]    One customer reported that he had received solicitations from competitors with lower bids, but "believed he would have 'problems' switching" to a competitor.  (Wood Dec. at ¶10.)

¶¶10-11.)  Ms. Wood expressed her belief that permitting Ferrante to resume a more significant role at Unique or U-Need "could be interpreted as a sign that past practices have returned to the carting industry on Long Island."  (Id., ¶11.)

In reply to the Wood Declaration, Ferrante's son and co-defendant Joseph Ferrante, the President of Unique and Vice-President of U-Need, submits a declaration.  According to Joseph Ferrante, Unique and U-Need's customers contract for periods of four to five years, and these contracts provide for price increases under certain circumstances, but otherwise no "across the board" rate increases of the magnitude of $2 per cubic yard have occurred.  (Joseph Ferrante Dec., at 1-2.)  He notes that his companies have not been "inundated with complaints from our customers," (id. at 2), that about ten new companies have been organized in the last two years, (id.), and that since the Consent Decree and stipulation of settlement were implemented, hundreds of contracts have expired but the majority of customers renewed their agreements with Unique and U-Need.  (Id. at 3.)  Finally, he notes that only five of the fifteen other companies that were members of the trade association remain in business.  (Id.)

## ANALYSIS

Although Ferrante does not specifically state the basis for his motion, his attention to changed circumstances indicates that this motion is brought pursuant to Federal Rule of Civil Procedure 60(b), by which this Court "may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: . . . (5) . . . it is no longer equitable that the judgment should have prospective application."  "A party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the consent decree."  Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 383 (1992).  Although Rufo concerned the vindication of constitutional rights, the same standard

4

is applied in this Circuit to consent decrees concerning statutory and other rights. See United States v. Eastman Kodak Co., 63 F.3d 95 (2d Cir. 1995) (applying Rufo to motion to terminate consent decree entered in 1921 and 1954 due to purported antitrust violations).

Rufo described three scenarios where changes in the factual circumstances support modification of a consent decree: (i) when changed factual conditions make compliance with the decree substantially more onerous; (ii) when the relief provided in the decree proves to be unworkable because of unforeseen obstacles; or (iii) when enforcement of the decree would be detrimental to the public interest. See Rufo, 502 U.S. at 384. Even if Ferrante can meet this burden, the Court must consider whether the proposed modification is suitably tailored to the changed circumstances. See id. at 383.

Plaintiff is surely correct that Ferrante's motion goes to the very heart of the judgment against him, since it enjoined him permanently from engaging in activities in the solid waste industry. Moreover, the changes which Ferrante states have occurred, if true, were intended by the consent decree and thus usually would not be a basis to support modification of the Consent Decree. See Rufo, 502 U.S. at 385 ("Ordinarily . . . modification should not be granted where a party relies on events that actually were anticipated at the time [the order was entered].") When the United States and Ferrante signed the Consent Decree, they did not intend it to operate only until a competitive market was restored in the carting and solid waste industry on Long Island.

The changes described by Ferrante do not make his compliance with the Consent Decree any more onerous, nor have any unforeseen obstacles appeared. Similarly, the public interest suffers no impairment due to Ferrante's continued exclusion from the industry, and indeed there is at least a moderate risk that his return would alter negatively perceptions of the marketplace. Accordingly, Ferrante has failed to meet his burden.

## <u>CONCLUSION</u>

The motion to modify the Consent Decree is denied.

Date:   May 19th, 2003
        Brooklyn, New York

_____
I. Leo Glasser
United States District Judge

6

Copies of the foregoing were sent on this day to:

Marshall G. Kaplan
40 Clinton Street, Suite 1H
Brooklyn, NY 11201
Attorney for Nicholas Ferrante

Claire S. Kedeshian
Assistant United States Attorney
Eastern District of New York
One Pierrepont Plaza, 14th Floor
Brooklyn, New York 11201

UNITED STATES DISTRICT COURT
Eastern District of New York

Civil Action   No. 89-1848

UNITED STATES OF AMERICA,

Plaintiff,

- against -

PRIVATE SANITATION INDUSTRY
ASSOCIATION OF NASSAU/SUFFOLK,
INC., et al.,

Defendants.

DECLARATION OF ASSISTANT U.S. ATTORNEY
CLAIRE S. KEDESHIAN IN OPPOSITION TO
ALLEN DEFENDANTS' MOTION TO
DISMISS FOR FAILURE TO PROSECUTE

ROSLYNN R. MAUSKOPF
United States Attorney,
Attorney for United States of America
Office and Post Office Address,
United States Courthouse
One Pierrepont Plaza
Brooklyn, New York 11201

Due service of a copy of the within
_____ is hereby admitted.

Dated: _____, 20___

_____
Attorney for _United States of America_
CLAIRE KEDESHIAN, AUSA
(718) 254-6051

---

SIR:

PLEASE TAKE NOTICE that the within will be presented for settlement and signature to the Clerk of the United States District Court in his office at the UNITED STATES DISTRICT COURT U.S. Courthouse, 225 Cadman Plaza East, EASTERN DISTRICT OF NEW YORK

Brooklyn, New York, on the _____ day of _____, 20___ at 10:30 o'clock in the forenoon.

Dated: Brooklyn New York,

_____, 20___

_____
United States Attorney,

To:

Attorney for _____

SIR:

PLEASE TAKE NOTICE that the within is a true copy of _____ duly entered herein on the _____ day of _____ in the office of the Clerk of the Eastern District of New York,

Dated: Brooklyn, New York

_____, 20___

United States Attorney,

Attorney for _____

To:

_____

United States Attorney,

Attorney for _____