ORIGINAL

SLR:DZ:RH:CSK
F# 8901653

CSK 7240 FILED

IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

☆ APR 13 20__ ☆

_____X

UNITED STATES OF AMERICA,

      Plaintiff

     -against-

PRIVATE SANITATION INDUSTRY
ASSOCIATION OF NASSAU/SUFFOLK
INC., et al.,

      Defendants.

_____X

Civil Action No.
CV 89-1848

(Glasser, J.)

This document was
___ Filed a hard copy.
___ Electronically filed.

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS JOHN ALLEN AND DANIEL FINOCCHIO
ALLEN & CO., INC. MOTION TO DISMISS
FOR FAILURE TO PROSECUTE**

ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York
One Pierrepont Plaza, 10th Floor
Brooklyn, New York 11201

CHARLES S. KLEINSHIAN
Assistant U.S. Attorney
(Of Counsel)

## PRELIMINARY STATEMENT

Plaintiff, United States of America, respectfully submits this memorandum of law, accompanied by the Declarations of Elaine Wood, a Managing Director at Kroll, Inc., dated July 26, 2004 ("Kroll Decl.") and Assistant United States Attorney Claire Kedeshian, dated July 28, 2004 ("Kedeshian Decl."), in opposition to defendants' John Allen and Daniel Finley Allen & Co., Inc. (hereinafter collectively referred to as the "Allen defendants") motion to dismiss for failure to prosecute.

The Allen defendants' motion should be denied. As has been demonstrated throughout the course of this action, the Long Island Carting industry has long been subject to organized crime influence and corruption. Because of this action, and the work of the Court-appointed monitors, great strides have been made towards eradicating this influence. Nevertheless, it is clear that coercion and intimidation at the hands of the defendants in this case, including the Allen defendants, persists and can be resolved only through court-ordered relief. In short, this civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") case remains crucial to the goal of ensuring that the private sanitation industry on Long Island and the customers served by that industry are free from racketeering, corruption, coercion and intimidation.

2

## STATEMENT OF THE CASE

The United States commenced this action against 112 individual and corporate defendants for the purpose of eliminating "the influence of organized crime from the carting industry and its labor unions, to enjoin defendants from continuation of the control, infiltration, influence and corruption of the industry, and to divest defendants of their interests in their racketeering enterprises." Complaint at ¶ 2. The defendants include John Allen and Daniel Finley Allen & Co., Inc.[1], who engaged in a pattern of racketeering activity, namely, the repeated briberies of Town of Oyster Bay employees, in furtherance of the Private Sanitation Industry of Nassau/Suffolk, Inc. ("PSIA") and Long Island Carting Industry Enterprises. See Complaint at ¶¶ 160-167.

The Court has established monitorships over the Long Island garbage carting industry and its labor union -- respectively, the Carting Industry Monitorship and the Local 813 Monitorship. See Kedeshian Decl. at ¶¶ 4, 9; Kroll Decl. at ¶ 4. The Allen defendants are not subject to either of these monitorships. See Kedeshian Decl. at ¶ 13.

On or about March 13, 1996, after taking the depositions of the Allen defendants and non-party witness Daniel C. Allen, the United States moved for summary judgment against the Allen defendants as well as other defendants. The motion was based, inter alia, on the admissions of defendant John Allen and his brother, Daniel C. Allen, to bribing Town of Oyster Bay scalehouse employees Joseph Vittorio, Jerome Kowalski, and Peter Stramiello with money

---

[1] The complaint also named defendant Sarah Allen, as an officer, director, shareholder, operator and/or employee of defendant Daniel Allen Carting. Complaint at ¶ 71. Upon learning of Sarah Allen's passing, the Government agreed to voluntarily dismiss any claims against this individual defendant. See Kedeshian Decl., dated July 28, 2004 at Exhibit A.

and other things of value on a weekly basis between 1982 and 1985 so that their family's carting company, the defendant Daniel Finley Allen & Co., would be charged lower tipping fees and dump bills. See United States v. PSIA, et. al., 1997 WL 724598 (September 30, 1997)(Glasser, J.) at * 3.

The Allen defendants opposed the motion arguing that they had been coerced and extorted into paying these bribes.  Judge Glasser rejected these defenses finding that they were unsubstantiated. Id. at * 4  ("Clearly the coercion and extortion defenses are not intended to permit defendants to break the law because 'everyone else was doing it.'").  The Court  granted summary judgment to the United States, ruling that the civil RICO remedies requested by the United States under § 1964 were appropriate. Id. at  * 6.  Specifically, the Court ordered that the Allen defendants be subject to the Carting Industry Monitorship; enjoined from participating in any trade waste association; pay the costs of the Monitorship, and disgorge all gains resulting from their bribery scheme (to be applied towards the carting industry monitoring fund) . Id. at 6.

On appeal, the Second Circuit remanded the case on the issue of RICO liability, finding that there was evidence that the Allen defendants' acts of bribery were in fact conducted through the PSIA and Carting Industry Enterprises, but that the defendants were entitled to argue at trial that "they *independently* recognized the possibility of bribing scalehouse employees." United States v. Allen, et.al., 155 F.3d 35, 42 (2d Cir. 1998)(emphasis in the original).  Importantly, the Second Circuit upheld this Court's rejection of the Allen defendants' coercion and extortion defenses. Id. at 43-44.

Subsequent to the Second Circuit decision, the United States continued to diligently prosecute this case.  Specifically, the United States successfully resolved its claims against

eighty-six (86) defendants, the majority of whom have agreed to be subject to the Consent Judgment entered by the Court on February 28, 1994 and the Carting Industry Monitorship. See Kedeshian Decl. at ¶¶ 4, 7. [2]  Fifty-four of the corporate and individual defendants, including their affiliated corporate entities, have agreed to be subject to the Carting Industry Monitorship, and have paid funds towards the on-going oversight by the Compliance Officer. Id.  Moreover, as a result of the United States' efforts, seven defendants have been permanently enjoined from the garbage carting industry. Id. at ¶ 8.

In addition, the United States has ensured that the Local 813 Monitorship[3] remains a robust and vital means of "eradicating any influence of organized crime or corruption over Local 813 while preserving the Local's strength as the representative of its membership." Id. at ¶ 9. Specifically, through the efforts of the United States,  procedures for free, fair and untainted Local 813 elections were established; the term of the Investigative Officer has been extended; the oversight authority of the Investigative Officer over subsequent Local 813 elections was expanded; and, most recently, the term of the Investigative Officer was extended for an additional three years. See id. at ¶ 10; Exhibit C at 2-3.

---

[2] Among the settling defendants who were subject to the Consent Judgment are A-1 Carting, South Side Carting, V & J Rubbish Removal, and their principles. See Kedeshian Decl. at ¶ 7 n. 1; Kroll Decl. at ¶ 4 n 1. Moreover, the defendant AA & M Carting was dismissed by stipulation following this Court's decision in United States v. PSIA, 793 F. Supp. 1114, 1143 ("PSIA I")(E.D.N.Y. 1992). Id.  By order of this Court dated September 7, 1993, default judgment was entered against the defendant Wayside Carting. Id.; see Docket Sheet,  United States v. PSIA, CV 89-1948 (ILG), Document No. 678.

[3]An ongoing, Court-appointed monitorship established on December 28, 1993 over the labor union whose membership includes truck drivers, collectors, maintenance personnel, clerical workers and others employed by companies engaged in the collection, transportation and/or disposal of solid waste on Long Island. See Kedeshian Decl. at ¶ 9; Complaint at ¶ 22.

The record, then, demonstrates that this case has been active on several fronts. Indeed, defendant Nicholas Ferrante recently moved to modify the terms of the November 6, 1996 Consent Decree. The United States opposed this motion and the Court denied the motion by order dated May 19, 2003. See Kedeshian Decl. at ¶ 11; Exhibit D.

The United States' prosecution of this case and the monitorships established by the February 28, 1994 Consent Judgment and the Local 813 Consent Decrees, have played an important role in increasing competition in the Long Island carting market. See Kroll Decl. at ¶¶ 5-6; Kedeshian Decl. at ¶¶ 9-10. Notwithstanding the United States' efforts, the ultimate goal of this civil RICO case -- "to ensure that the private sanitation industry on Long Island and the customers serviced by that industry be free from racketeering, corruption, violence or the threat of violence, and the influence and effects of organized crime"-- has not yet been fully realized. Kedeshian Decl. at ¶ 5; Kroll Decl. ¶¶ 7, 10. The continuing need for the relief established through this action thus far remains clear, as indicated by the Court in rejecting the Ferrante application. Similarly, it is equally clear that further relief still, including relief as to the Allen defendants, is needed.

The potential for collusion and intimidation in the Long Island solid waste industry still exists, as evidenced by the actions of the Allen defendants. Kroll Decl. at ¶¶ 7, 8, 10. Specifically, on or about October 1999, two different commercial customers reported to the Court-appointed Compliance Officer that they had received repeated threats from defendant John Allen. See Kroll Decl. at ¶ 8. According to these customers, John Allen threatened to interfere with their businesses by using garbage containers to block the entrance of the customers businesses; threatened their families; and/or threatened them with fear of bodily harm. Id. at ¶ 8.

6

As a result of defendant John Allen's conduct, these customers felt forced to use Daniel Finley

Allen & Co. as their garbage carting company and to make payments to the Allen defendants. Id.

at ¶ 8.

These customers currently use Daniel Finley Allen & Co. as their carting company,

although not by choice. Id. at ¶ 9. Their landlord has contracted directly with Daniel Finley

Allen & Co. and, as tenants, they have no ability to choose another carting company. Id. at ¶ 9.

One customer, who plans to move his business, has reported that when he relocates he will not

use Daniel Finley Allen & Co. in part because of the threats made by the Allen defendants in the

past. Id. at ¶ 9.

In light of the foregoing, and because of the history of bad practices, intimidation and

threats, there continues to be a need for oversight over the Long Island garbage carting industry

to ensure its integrity. See Kroll Decl. at ¶ 13.

## ARGUMENT

## THIS CASE IS CRUCIAL TO THE ERADICATION OF CORRUPTION IN THE LONG ISLAND GARBAGE CARTING INDUSTRY AND SHOULD NOT BE DISMISSED

The Allen defendants contend that the United States has failed to pursue its claims since the Second Circuit's decision to remand a portion of this case for further proceedings. The facts and circumstances in this complex, multi-defendant civil RICO case show otherwise. Moreover, as demonstrated herein, although the United States has diligently prosecuted this action, there is additional, important work to be done to ensure that the Long Island garbage carting market is free from collusion and intimidation.

A.  Standard for Dismissal for Failure to Prosecute under Fed. R. Civ. P. 41(b)

Federal Rule of Civil Procedure 41 (b) provides in relevant part: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant."

The Second Circuit has identified five factors that the Court should consider in assessing whether to dismiss an action. These factors are considered in light of the record as a whole:

> (1) the duration of the plaintiff's failures, (2) whether plaintiff had received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether the district judge has taken care to strike a balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard. . .and (5) whether the judge has adequately assessed the efficacy of lesser sanctions.

Jackson v. City of New York, 22 F.3d 71, 74 (2d Cir. 1994)(quoting Alvarez v. Simmons Mkt. Research Bureau, Inc., 839 F. 2d 930, 932 (2d Cir. 1988)). Although all five factors are used as guidelines, "[g]enerally no one fact is dispositive." Nita v. Connecticut Dpt. of Env. Protection,

16 F.3d 482 (2d Cir. 1994).  See also,  United States v. Norden Systems, Inc. and United

Technologies Corp., 2004 WL 1563184 at * 5 (2d Cir. July 14, 2004).

The Supreme Court has noted that the language of the rule is "permissive" and "merely

authorizes a motion by the defendant."  Link v. Wabash Railroad Co., 370 U.S. 626, 630 (1962).

Moreover, a dismissal for lack of prosecution is a discretionary act and a matter committed to the

sole and sound discretion of the district court.  Colon v. Mack, 56 F.3d 5 (2d Cir. 1995); Minnett

v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993); Gibbs v. Hawaiian Eugenia Corp., 966

F.2d 101, 109 (2d Cir. 1992).  Indeed, the Second Circuit has repeatedly emphasized that

"dismissal is a 'harsh remedy to be utilized only in extreme situations.'"  Gibbs, 966 F.2d at 109

(quoting Theilmann v. Rutland Hospital, Inc., 455 F.2d 853, 855 (2d Cir. 1972)).

B. The Record Establishes That the United States Has Been Diligent and that
Defendants' Motion Should Be Denied.

Far from suggesting dismissal, the proceedings in this action dictate that the case continue

against the remaining defendants and that the Allen defendants' motion be denied.

1. The action has been resolved as to the majority of the defendants and must
continue so that corruption in the industry is eradicated.

In deciding the pending motion, the United States' efforts with respect to two of the 112

defendants should not be examined by the Court in isolation.  Rather, the United States'

accomplishments should be examined in context, in light of the record as a whole.  Norden

Systems, Inc., 2004 WL 1563184 at * 9 (reviewing dismissal for want of prosecution in light of

record as a whole); Peart v. City of New York 929 F.2d 458, 461 (2d Cir. 1993)(same). See

Alvarez, 839 F.2d at 932 (2d Cir. 1988)(finding under all the circumstances that district court's

dismissal of complaint was an abuse of discretion).

The purpose of this civil RICO action has been nothing less than "to eliminate the influence of organized crime from the carting industry and its labor unions, to enjoin defendants from continuation of the control, infiltration, influence and corruption of the industry, and to divest defendants of their interests in their racketeering enterprises." Complaint at ¶ 2.  Thus, from the outset, this action has at once been sweeping in scope and crucial to eliminating organized crime from all aspects and all components of an entire industry.  In furtherance of this goal, the United States has been able to establish two different monitorships over the industry and its labor union; resolve this lawsuit with eighty-six of the named defendants; and enjoin seven defendants from any significant participation or activity in the garbage carting industry. See Kedeshian Decl. at ¶¶ 4-11; Kroll Decl. at ¶ 4.  Through the monitorships, the United States has made great strides towards ensuring "that the private sanitation industry on Long Island and the customers serviced by that industry be free from racketeering, corruption, violence or the threat of violence, and the influence and effects of organized crime." See Kedeshian Decl. at ¶ 5.

Despite these accomplishments,  the goal of this civil RICO action has yet to be fully realized and cannot be fully realized until the case is resolved as to all defendants.  See Kroll Decl. ¶ 10.  Although there is evidence of increased competition in the Long Island carting market, see Kroll Decl. at ¶¶ 5-6, the potential for collusion and intimidation still exists today in the Long Island solid waste industry.  See id. at ¶¶ 7, 10.  This is exemplified by the threats made by defendant John Allen to customers of the defendant Daniel Finley Allen & Co. while this action has been pending.  See Kroll Decl. at ¶¶ 8-10.

These acts, together with the record evidence of other bad practices, intimidation and threats, demonstrate that there continues to be a need for oversight over the Long Island garbage

carting industry.  See Kroll Decl. at ¶ 10.  Thus, the Allen defendants do not meet the first prong of the Second Circuit's five-factor analysis.

## 2.  The United States has not been given notice of potential dismissal.

The United States has complied with all court-imposed deadlines and mandates throughout the course of this litigation.  See A. Giuliano v. Everything Yogurt, 152 F.R.D. 449, 452 (E.D.N.Y. 1994) (Glasser, J.)("Dismissal ...is only appropriate when plaintiff has made no moves whatsoever to move his or her case to trial.").

Notably, since the Second Circuit's decision in this case, the Allen defendants have never raised the issue of dismissal for failure to prosecute.  Only now have they raised the question, after receiving the United States' request to update discovery.  See Kedeshian Decl. at ¶ 3; Exhibit A.  As this Court has never issued notice to the United States of the possibility of dismissal,  this case should not be dismissed for failure to prosecute.  See Freed v. Braniff, 119 F.R.D. (S.D.N.Y. 1987)(complaint was not dismissed for failure to prosecute on ground that plaintiff had not received any prior warnings that delay would occasion dismissal); In Re T. John Folks, 210 B.R. 674, 676 (E.D.N.Y. 1997)(Wexler, J.)(record contained no evidence of any notice from the court to plaintiff that case was on the brink of dismissal).

## 3.  Defendants have not been prejudiced by any delay.

Defendants cannot demonstrate that they have been prejudiced by the course of this litigation.  To the contrary, throughout this litigation defendants have been permitted to continue their carting business without any hindrance or oversight.  See Kedeshian Decl. at ¶¶ 12-13.

The utter absence of prejudice to the Allen defendants is set-in relief by the fact that they have chosen not to submit a declaration in support of their motion, relying instead on affidavits

11

from their counsel and from non-party, Daniel C. Allen. These affidavits fail to add any significant or relevant information in support of the Allen defendants' motion. For example, the Affidavit of Daniel C. Allen contends that some co-defendants are no longer in existence. See Affidavit of Daniel C. Allen dated June 14, 2004 ("Daniel C. Allen Affidavit") at ¶ 7. Whether or not *other* co-defendants no longer exist, does not change the fact that the *Allen defendants*, during the relevant period of the Town of Oyster Bay bribery scheme (1982 through 1985) and up through the present, have remained in business. See Daniel C. Allen Affidavit at ¶ 4. [4] Moreover, the status of other defendants does not change the undisputed fact that the Allen defendants bribed Town of Oyster Bay scalehouse employees and that their defenses have been rejected as a matter of law. See United States v. John Allen, et. al., 155 F.3d at 42-44.

Only after they were served with supplemental discovery requests did the Allen defendants see fit to file their motion to dismiss. Prior to that time, it can be inferred that they had no incentive to seek dismissal. See Finley v. Parvin/Dohrmann, 520 F.2d 386, 392 (2d Cir. 1975)(Friendly, J.)(district court could also take defendant's silence into account when deciding whether or not to dismiss for failure to prosecute). Indeed, the Allen defendants' misconduct has continued since the Second Circuit's decision, as demonstrated by customers of the Allen defendants who have reported that the defendant John Allen continued to use intimidation and threats to ensure defendant Daniel Finley Allen & Co.'s control over private garbage carting services on Long Island. See Kroll Decl. at ¶¶ 8-9.    The only basis for prejudice articulated by

---

[4] This aside, the Daniel C. Allen Affidavit fails to acknowledge that several of these co-defendants were among the Monitored Defendants subject to the Consent Judgment; another co-defendant was dismissed from the case by stipulation; and yet another co-defendant is in default. See Kroll Decl. at ¶ 4 n. 1; Kedeshian Decl. at ¶ 7 n. 1.

12

the Allen defendants is the death of Sarah Allen. However, the loss of defendant Sarah Allen

works no prejudice here as her deposition testimony in connection with this litigation was taken

on March 2, 1994 and therefore, has been preserved.[5]

    4. <u>Due process considerations mitigate against dismissal.</u>

    Defendants contend that the United States has had ample opportunity to be

heard during the course of this action and therefore this case should now be dismissed. This

argument misses the mark. Although significant progress has been made, the Long Island

garbage carting industry market is still vulnerable to coercion and intimidation, particularly with

respect to the remaining defendants. <u>See</u> Kroll Decl. at ¶ 5-10; Kedeshian Decl. at ¶¶4-11. The

United States has a compelling interest in eradicating corruption in the industry and should be

allowed to obtain relief from the remaining defendants. <u>See</u> <u>Sanitation and Recycling Industry v.</u>

<u>City of New York</u>, 107 F.3d 985, 998 (2d Cir. 1997)("We think it beyond question that the

government has a compelling interest in combating crime, corruption and racketeering–evils that

eat away at the body politic. This interest extends to the carting industry..."). Moreover, there is

nothing in the record to suggest that the United States' accomplishments in this case have

impacted this Court's trial calendar or otherwise impeded this Court's work. <u>See</u> <u>Norden</u>

<u>Systems, Inc.</u>, 2004 WL 1563184 at * 8; <u>Jackson</u>, 22 F.3d at 76. Rather, the United States

respectfully submits, the establishment of the Court-appointed monitorships have assisted the

work of this Court. Accordingly, due process considerations mitigate against dismissal and the

United States should be permitted to continue to pursue its claims against the remaining

―――――――――――――

    [5] Upon learning of Sarah Allen's death, the United States voluntarily dismissed this
defendant from this case. <u>See</u> Kedeshian Decl. at Exhibit A.

13

defendants in this case.

    5. <u>The harsh sanction of dismissal is not appropriate.</u>

    As this Court has previously observed, "[a] review of the relevant case law indicates that the 'extreme situations' and 'rare occasions' referenced. . . are those situations wherein the conduct of the dilatory plaintiff is drastic and evidences a clear intent not to take a case to trial in an efficient and orderly fashion." <u>Everything Yogurt</u>, 152 F.R.D. at 452.  No such situation is present here, where the United States has worked diligently to resolve this case as to eight-six defendants. <u>See</u> <u>supra</u> at 2-6.  The harsh sanction of dismissal is not appropriate, particularly in light of the history of the Long Island garbage carting industry,  <u>see</u> Kroll Decl. at ¶¶ 4-7, 10; Kedeshian Decl. at ¶¶ 4-13, and the specific incidents of continuing intimidation by the Allen defendants, <u>see</u> Kroll Decl. at ¶¶ 8-9.

14

## CONCLUSION

For the reasons stated herein, the defendants motion to dismiss this action

for failure to prosecute should be denied.

Dated: Brooklyn, New York
      July 28, 2004

                          Respectfully submitted,

                          ROSLYNN R. MAUSKOPF
                          United States Attorney
                          Eastern District of New York
                          Attorneys for the Plaintiff
                          One Pierrepont Plaza 16th Floor
                          Brooklyn, New York 11201

CLAIRE S. KEDESHIAN
Assistant U.S. Attorney
(of counsel)

As this Court has previously observed, "[a] review of the relevant case law indicates that the 'extreme situations' and 'rare occasions' referenced. . . are those situations wherein the conduct of the dilatory plaintiff is drastic and evidences a clear intent not to take a case to trial in an efficient and orderly fashion." Everything Yogurt, 152 F.R.D. at 452. No such situation is present here, where the United States has worked diligently to resolve this case as to eight-six defendants. See supra at 2-6. The harsh sanction of dismissal is not appropriate, particularly in light of the history of the Long Island garbage carting industry, see Kroll Decl. at ¶¶ 4-7, 10; Kedeshian Decl. at ¶¶ 4-13, and the specific incidents of continuing intimidation by the Allen defendants, see Kroll Decl. at ¶¶ 8-9.